# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TERRY BELL**                                              **CIVIL ACTION**

**VERSUS**

**GERALD LANE, ET AL.**                        **NO.: 12-00529-BAJ-SCR**

## RULING AND ORDER

Before the Court is **Defendants' Motion for Summary Judgment (Doc. 61)**, filed by Defendants Gerry Lane Enterprises, Inc. and Eric Lane[1] (collectively "Defendants"), seeking an order from this Court granting summary judgment, pursuant to Federal Rule of Civil Procedure 56, and dismissing Plaintiff Terry Bell's ("Bell") claims. Bell opposes the motion. (Doc. 63.) Defendants filed a reply memorandum. (Doc. 71.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

### A. Bell's Complaint[2]

Bell filed this employment discrimination lawsuit pursuant to Title VII of the

---

[1] Defendant Eric Lane is named as a Defendant in his capacity as the Representative of the Succession of Gerald R. Lane. (Doc. 46.)

[2] Bell originally filed this lawsuit along with ten other current and former employees of Gerry Lane Enterprises, Inc. (Doc. 1.) Subsequently, the Court issued an order requiring the Clerk of Court to sever the claims into eleven separate lawsuits, and requiring each plaintiff to file an amended complaint. (Doc. 4.) Accordingly, Bell filed his amended Complaint on September 11, 2012. (Doc. 6.)

Civil rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), Title I of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.*[3] Bell, an African American male, alleges that Defendants discriminated against him on the basis of his race, national origin, sex, and disability, and constructively discharged him from his sales representative position at Gerry Lane Chevrolet in Baton Rouge, Louisiana. Specifically, Bell alleges that dealership owner, Gerald R. Lane ("Lane"), and his assistant, Wayne Garafola ("Garafola"), created a hostile work environment in which Bell was subjected to discriminatory comments, name-calling, abusive language, intimidation, racial slurs, lewd comments and advances, and unwelcome physical contact. Bell further alleges that Defendants refused to provide him with a reasonable accommodation, in violation of the ADA. Bell's Complaint also alleges that Defendants are liable for intentional infliction of emotional distress. Bell further alleges claims for assault and battery, pursuant to La. R.S. § 14:36 and La. Civ. Code art. 2315, and a claim for unpaid wages under La. Rev. Stat. § 23:631, *et seq.*

---

[3] A previous ruling by this Court indicated that Bell also asserted a claim under 42 U.S.C. § 1981. (Doc. 86, p. 1.) However, a review of Bell's Complaint reveals that he seeks damages under 42 U.S.C. § 1981(a) *only*, and did not allege a claim under 42 U.S.C. § 1981. Under the terms of the Civil Rights Act of 1991, punitive damages awards are available in claims under Title VII. 42 U.S.C. § 1981(a)(b)(1). It is well established, however, that Title VII and 42 U.S.C. § 1981 are two separate and distinct causes of action. *Green v. Shannon Med. Ctr.*, No. 6:04-CV-066-C, 2006 U.S. Dist. LEXIS 4967, at *8 (N.D. Tx. Feb. 9, 2006).

## B.    Undisputed Facts[4]

- Defendant Gerry Lane Enterprises does business as Gerry Lane Chevrolet, an automobile dealership in Baton Rouge.

- Prior to his May 2013 death, Lane owned a majority interest in Gerry Lane Enterprises.

- Lane also owned a majority interest in three other new car dealerships in Baton Rouge: Gerry Lane Cadillac, Gerry Lane Buick GMC and Gerry Lane Imports.

- Sales Managers Ken Balthrop (African-American), Chad Bell (Caucasian), Cecil Overstreet (African-American) and JK Khamiss (Middle-Eastern) reported to Reynold Ankeny (Race Disputed) and directly supervised the sales force during Bell's last two years of employment.

- The sales force typically is comprised of anywhere between twenty to thirty individuals.

- During the 2011-2012 time-frame, approximately seventy to eighty percent of the sales force was African-American.

- Bell, who is African-American, was born in Florida in 1961 and lived for a time in Georgia before moving to Baton Rouge in 1993.

- In 1998, Bell began working for Gerry Lane Enterprises selling cars.

- At various times throughout his employment, Bell received policies governing the terms of his employment.

- These included Gerry Lane Enterprises' equal opportunity and non-harassment policies.

- Bell recalls attending a meeting where the policy on harassment and discrimination was covered.

- This was Bell's first position in automotive sales.

---

[4] In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Defendants submitted a statement of undisputed material facts. (Doc. 64-2); L.R. 56.1. In opposition, Bell submitted a response to Defendants' statement of undisputed material facts. (Doc. 67-2); Fed.R.Civ.P. 56(c); L.R. 56.2. Accordingly, only certain material facts are deemed admitted for purposes of this ruling and order. L.R. 56.2.

- Bell was hired by Rusty Allemand (Caucasian), the General Manager at the time.

- Gerry Lane Chevrolet was a "high-pressure" sales environment and ranked either first or second among Chevrolet dealerships in Baton Rouge.

- During his employment, Bell worked on commission- meaning the more cars he sold, the more money he earned.

- Bell consistently performed well and was generally in the "top five.'

- By his own estimate, Bell averaged around fourteen to fifteen vehicle sales per month.

- Diane Trask, who is also African-American, was generally the top-selling sales representative during his term of employment.

- All sales representatives and managers were required to attend daily sales meetings and to report to those meetings on time.

- The purpose of these meetings was to educate the sales staff on how to increase sales and profitability and to review the previous day's events.

- Employees who reported late or who missed meetings typically were yelled at by management staff.

- The Dealership had a dress code requiring all male sales staff to wear a shirt, tie, slacks and shoes.

- Male sales representatives were required to report to work clean-shaven.

- Bell typically shaved three times per week.

- The Company offers a demonstrator vehicle to all sales representatives who qualify under its program.

- Demonstrators are almost always new vehicles from inventory.

- Throughout most of his employment, Bell qualified for and was provided a demonstrator.

- Employees assigned demonstrators were responsible for any damage and were required to provide a damage deposit.

- The purpose of this program was to facilitate sales by allowing the sales representative to demonstrate the vehicle to potential customers, including neighbors and friends.

- In approximately 1999, Bell was involved in a romantic relationship with a co-worker (Celita Askins).

- The two went to a nightclub and parked the demonstrator assigned to Bell behind the Dealership.

- Bell and Askins became embroiled in a disagreement at the nightclub and, at approximately 2:00 a.m., Askins proceeded to beat the demonstrator with a stick, breaking the windshield and headlights and scratching the side of the truck.

- Bell recalls that Askins caused approximately $3,000.00 worth of damage.

- Askins was terminated for her actions, and Bell was required to pay for the damage pursuant to the Demo Program Policy.

- In or around 2002, Bell was involved in an accident while operating a demonstrator.

- Bell injured his knee in this accident and missed approximately three to four months of work.

- Bell was subsequently issued a Demo Revocation Final Warning in August 2007.

- In 2007, Bell's assigned demonstrator was vandalized resulting in approximately $2,700.00 in damages.

- In February 2012, Bell's physician recommended knee surgery and that Bell take medical leave.

- Cindy Brown (Office Manager) handled the paperwork concerning Bell's leave in 2012.

- Bell was notified on February 8, 2012 that his leave had been approved for a total of fourteen (14) weeks (twelve under the Family Medical Leave Act and two for accrued paid vacation).

- Bell was informed at that time that he needed to pay his portion of the insurance premiums to keep his benefits active while on leave, and he was told further that his approved leave would end on May 17, 2012.

- On April 10, 2012, Eric Lane left a voice-mail message inquiring about Bell's status.

- In response, Bell texted: "I left a voice message also Lane. Thank you for calling me. It meant a lot. Ruptured Disc in back affecting walking, sitting, standing but Therapy is good. As far as Knee goes Its coming good. I'm getting injections on the 24th of this month. Hopefully I can return soon. Thanks again! God Bless You and Family."

- Eric Lane replied by stating: "Will pray for you. You mean a lot to us. Get well soon. Eric."

- On May 10, 2012, Cindy Brown sent a letter to Bell letting him know that his leave was scheduled to end in a week and requesting a medical certification before he returned to work.

- Bell responded with a letter to Cindy Brown, dated May 15, 2012, notifying her of his "intention to return to work."

- Bell's letter stated also that he needed to extend his leave beyond the May 17, 2012 deadline.

- Bell attached a note to the letter indicating that he could return to work with restrictions on July 4, 2012.

- The Company extended Bell's leave to July 4, 2012.

- In late May 2012, following the expiration of his leave, Cedric Patton directed Cecil Overstreet to have Bell return the demonstrator.

- Bell returned the demonstrator vehicle to Cecil Overstreet and indicated that he was upset.

- Bell did not speak to anyone about the decision other than Cecil Overstreet.

- Cecil Overstreet told him that it was strictly Patton's decision.

- Bell's counsel sent a legal demand letter, dated June 5, 2012, notifying the Company that he intended to pursue claims of race harassment, sex harassment and disability discrimination regarding the termination of his insurance and the return of the demonstrator.

- Bell also filed a charge of discrimination with the EEOC on June 5, 2012.

- No prior legal claims had been made on Bell's behalf.

- Without having any further discussions with anyone associated with the Company, Bell faxed a resignation letter to the Dealership, dated June 28, 2012.

- Bell was not released to work by his physician until August 2012 but with restrictions on his activities.

- Bell has not been able to perform the functions of a full-time sales representative at any time since February 2012 up through the date of his deposition (August 30, 2013).

- Lane told Caucasian managers that "he could get a monkey to try," as it was a phrase used by Lane.

- The Dealership has hired numerous African-Americans to work in sales since Bell's resignation.

- Lane provided Cedric Patton with an ownership interest in his business operations and put him in charge of the Chevrolet and Buick GMC dealerships.

- Bell was covered through Gerry Lane Enterprises' medical insurance plan during the entirety of his FMLA leave.

- Like all other employees, Bell was provided the opportunity to continue benefits through COBRA.

- Instead, Bell chose to go on his wife's employer's plan.

- Bell testified that he was periodically recruited by former managers to work for All Star Chevrolet (a similar-sized dealership to Gerry Lane Chevrolet) as late as 2010.

- Bell chose not to leave Gerry Lane Chevrolet, because he had already invested thirteen to fourteen years and did not want to "bounce around from one dealership to the next one."

- Bell never sought any sort of medical or professional help for any stress- related problems relating to the alleged conduct at Gerry Lane Chevrolet.

### C.    Defendants' Motion for Summary Judgment

As to the instant motion, Defendants seek an order from this Court dismissing Bell's claims.  Defendants contend that Bell is precluded from asserting federal or state law discrimination claims against individual supervisors.  Defendants further argue that Bell cannot point to sufficient evidence to establish discrimination claims on the basis of his disability, sex, national origin, or race.  Defendants also contend that Bell cannot point to sufficient evidence to establish his constructive discharge, intentional infliction of emotional distress, assault and battery, or unpaid wages claims.  Accordingly, Defendants argue that summary judgment is warranted.

Bell concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee.  Bell further concedes that he cannot point to sufficient evidence to establish his unpaid wages claim.  He argues, however, that there are genuine disputes of material fact that preclude summary judgment in favor of Defendants.  Specifically, Bell contends that there are genuine disputes of material fact related to his race and sex discrimination claims, as well as his constructive discharge, intentional infliction of emotional distress, and assault and battery claims.  Accordingly, Bell contends that Defendants' motion must be denied.  Bell does not make any specific arguments related to, or present any evidence in support of, his national origin discrimination or ADA claims.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable

inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

## III.    Analysis

As an initial matter, as noted above, Bell concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee. *Umoren v. Plano Indep. Sch. Dist.*, 457 F. Appx. 422, 425 (5th Cir. 2012); *Mitchell v. Tracer Construction Co., et al.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003); *see also* La. R.S. 23:303(A). Accordingly, Defendants' request that the Court dismiss Bell's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee is **GRANTED**.

Bell also concedes that he cannot point to sufficient evidence to establish his unpaid wages claim. Accordingly, Defendants' request that the Court dismiss Bell's unpaid wages claim is **GRANTED**.

## A.     Bell's Americans With Disabilities Act Claim

In his Complaint, Bell alleges that Defendants violated the ADA when the Company did not provide him with a reasonable accommodation, and when the Company cancelled his health insurance.  (Doc. 6, p. 5.)

Where, as here, only circumstantial evidence is offered to establish the plaintiff's ADA claim, courts in this Circuit apply the *McDonnell Douglas*, Title VII burden-shifting analysis.  *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279-280 (5th Cir. 2000) (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973))).   Under this framework, a plaintiff must first make a prima facie showing of discrimination by establishing that: (1) he is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees.  *Id.* (citing *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997), *cert. denied* 522 U.S. 1084 (1998)).  Once the plaintiff makes his prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination.  *Id.* (citing *Daigle*, 70 F.3d at 396).

In support of the motion, Defendants contend that Bell cannot point to sufficient evidence to establish that he was subjected to an adverse employment action on

account of his disability. Bell failed to present any argument, or point to any evidence, in opposition. Indeed, Bell failed to present any evidence whatsoever to support his ADA claim. Accordingly, it is reasonable for the Court to conclude that Bell has abandoned his ADA claim at the summary judgment stage. *See Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 113 (5th Cir. 2010) ("The fact that [plaintiff] raised this argument in its complaint will not save it from waiver if it failed to present this argument in its summary judgment motions.") (citation omitted); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Penrod v. Bank of N.Y. Mellon*, 824 F. Supp. 2d 754, 763 (S.D. Tx. 2011) ("Plaintiffs' summary judgment response has abandoned the claim, offering no briefing on the subject."). As such, Defendants' request that the Court dismiss Bell's ADA claim is **GRANTED**.

## B.   Bell's Hostile Work Environment Claim on the Basis of His Sex[5]

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). Such a violation occurs when the plaintiff establishes (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment

---

[5] Employment discrimination claims under Title VII and the Louisiana Employment Discrimination Law are analyzed under the same standard. *Turner v. Kan. City Southern Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012) (the Louisiana Employment Discrimination Law requires the same elements of proof as a Title VII hostile work environment claim); *Knapper v. Hibernia Nat'l Bank*, 49 So. 3d 898, 902 n.11 (La. Ct. App. 2010) ("Claims under the [Louisiana Employment Discrimination Law] are subject to the same analysis as discrimination claims under federal Title VII of the Civil Rights Act of 1964."). Accordingly, Bell's claims under Title VII and the Louisiana Employment Discrimination Law sBell be jointly addressed and analyzed.

complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Here, Defendants contend that Bell cannot establish that the harassment complained of affected a term, condition, or privilege of his employment.

In order for harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank*, 477 U.S. at 67). For harassment to be sufficiently severe or pervasive to alter the conditions of employment, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Harris*, 510 U.S. at 21-22. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; (4) whether it interferes with an employee's work performance. *Id.* at 23.

In opposition, Bell contends that he was subject to severe and pervasive sexual harassment by Lane and Garafola. In support of this contention, Bell points to his deposition, in which he testified as follows:

- Lane "did the nut check on [Bell]" "weekly" and "bumped [Bell] on [his] butt" "all [of] the time." However, when asked, Bell was unable to identify exactly how many times Lane "bumped" or "slapped" him on the butt. (Doc. 63-5, pp. 79-84);

- Lane touched Bell's face to ensure he was clean shaven. It is unclear from Bell's testimony how many times or how often Bell alleges Lane touched his face. (Doc. 63-5, p. 86);

- Garafola "used to come up behind [Bell] and touch [him], rub the back of [his] leg" and "[say] he'd never been with a woman" (Doc. 63-5, p. 81);

- Garafola continued to touch Bell after Bell told him "don't touch me anymore" (Doc. 63-5, pp. 81-82);

- Garafola asked Bell out on a date "a couple times" (Doc. 63-5, pp. 87-88);

- Garafola asked Bell if he had "ever sucked semen out of a straw" "several" times. When Bell responded "hell no," Garafola said "You ought to try it" (Doc. 63-5, p. 88-90);

- Garafola would "sit at the operator's booth and he'd kiss at you, at me and others, and he'd stick his tongue out and wiggle it around." (Doc. 63-5, p. 92)

Simply put, Bell has failed to point to sufficient evidence from which a jury could conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment. Even viewing the facts in the light most favorable to Bell, Garafolo's actions simply do not approach the level of severe and pervasive conduct that would "destroy [Bell's] opportunity to succeed in the workplace." *Shepard v. Comptroller of Public Accounts of State of Tx.*, 168 F.3d 871, 874-75 (5th Cir. 1999) (evidence that a co-worker had made several sexually suggestive comments, often tried to look down the plaintiff's clothing, touched and rubbed the

plaintiff's arm, and twice invited her to sit on his lap during office meetings was not sufficiently severe to be actionable under Title VII).

> Even when a hostile environment is shown, a plaintiff must establish that the workplace environment had the effect of altering the terms and conditions of his employment. Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged him from remaining on the job, or kept him from advancing in his career. Title VII is intended only to prohibit and prevent conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace.

*Sparks v. Alrod Enters.*, No. 3:00-CV-2110-L, 2003 U.S. Dist. LEXIS 7095, at *17 (N.D. Tex. Apr. 28, 2003) (citing cases) (internal quotations omitted). Indeed, when compared to cases in which courts in this Circuit have denied summary judgment or afforded relief, Garafola's actions were simply not frequent or serious enough to alter the conditions of Bell's employment. *Compare Hockman v. Westward Communs., LLC*, 407 F.3d 317, 328-29 (5th Cir. 2004) (finding that the defendant's actions of making one remark to the plaintiff about another employee's body, slapping the plaintiff on her behind with a newspaper, grabbing or brushing against the plaintiff's breast or behind, attempting to kiss the plaintiff on one occasion, and standing in the door of the women's bathroom while the plaintiff was washing her hands did not qualify as a hostile work environment), *with Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 (5th Cir. 2001) (finding that repeated sexual advances in the face of adamant refusals by the plaintiff were sufficiently extreme to qualify as a hostile work environment).

Accordingly, Defendants' request that the Court dismiss Bell's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**.

## C. Bell's Hostile Work Environment Claim on the Basis of His Race

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. *Ramsey*, 286 F.3d at 268. "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[6] *Ramsey*, 286 F.3d at 268. Here, Defendants argue that Bell cannot point to sufficient evidence to establish that the harassment complained of was based on race, or that it affected a term, condition or privilege of his employment.

In opposition to the motion, Bell contends that Lane and Garafola subjected him to severe and pervasive harassment on the basis of his race. In support of this contention, Bell points to his deposition, in which he testified as follows:

· sometime after 2010, Lane told Bell to "get [his] black ass to the sales meeting on time" (Doc. 63-5, pp. 6-7);

---

[6] Where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

- Lane told Bell to "get [his] black ass to work" "several times." Lane did not tell white sales employees to "get [their] white assess to work" (Doc. 63-5, p. 56-57, 60-61);

- during a meeting with sales employees, Lane referred to an African American employee's Native American heritage as being from the "nigga ho tribe" (Doc. 63-5, pp. 20, 29);

- Bell overheard Lane refer to African American sales employees who were gathered under a tree adjacent to the dealership as "monkeys under the tree" "more than once" in 2011 (Doc. 63-5, p. 99);

- Lane touched the faces of African American employees, including Bell, to ensure they were clean shaven. Bell testified that he did not see Lane touch the faces of any of the white sales employees. (Doc. 63-5, pp. 10, 13, 15)

- Lane "frequently" referred to the dealership as his "plantation," and referred to the cars at the dealership as his "cotton" "all [of] the time" during Bell's first seven years of employment. Lane made such comments "one or two times" in the final seven years of Bell's employment. (Doc. 63-5, pp. 66, 69);

- Lane referred to an African American co-worker as "Ninth Ward dago trash" (Doc. 63-5, p. 72)

- Lane "used to always in the sales meetings . . . what'd you do to [Celita Askins] to make her beat that damn demo up; you must have put the donkey dick on her or something." Lane further testified that such comments eluded to a racial stereotype about African American anatomy and were "belittling," "embarrassing," and "humiliating" (Doc. 63-5, pp. 73-74);

- Lane referred to the neighborhood behind the dealership as "ghetto" (Doc. 63-5, p. 33);

- Lane called Bell a "blind runaway monkey" (Doc. 63-5, p. 60);

- Lane told Bell that "he could get a monkey to try" when Bell did not perfom at Lane's expectations (Doc. 63-5, p. 60);

- Bell overheard Lane use the word "nigger" while talking with another salesman, Jimmie Singleton. (Doc. 63-5, pp. 20, 25-26);

- Garafola referred to African American employees as "Canadian" "quite often." Bell testified that, sometime in 2010 or 2011, Garafola explained to him that he used the word "Canadian" as a code word for "nigger" (Doc. 63-5, p. 49)

Viewing the facts in the light most favorable to Bell, the Court finds that he has presented sufficient evidence to establish a genuine dispute of material fact from which a jury could conclude that the harassment complained of was based on race. Such a conclusion is underscored by the deposition testimony of Bell's white co-worker, who testified that he "never heard [Lane] talk to the white salespeople like the black salespeople. Definitely. He never said the same things to us that he would say to the others," and the deposition testimony of another white co-worker who testified that "[Lane] was making racial comments on a daily basis." (Doc. 63-14, p. 4; Doc. 63-10, p, 7.)

Viewing the facts in the light most favorable to Bell, the Court also finds that he has presented sufficient evidence to establish a dispute of material fact from which a jury could conclude that the harassment was severe and pervasive. Indeed, the evidence presented by Bell suggests more than just a handful of racially-charged comments. Rather, the evidence presented supports the conclusion that Lane and Garafola subjected Bell to race-based insults, ridicule, and intimidation on a regular basis. *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) ("Frequent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists.").

Further, where, as here, the plaintiff has presented evidence of a pattern of race-based harassment, it is appropriate for the Court to consider incidents of non-race-based harassment. *Compare WC&M Enters, Inc.*, 496 F.3d at 400 (determining that

a fact finder could reasonably conclude that a co-worker's frequent banging on the glass partition of the plaintiff's office was motivated by animus related to the plaintiff's national origin because the same co-worker had repeatedly called the plaintiff "Arab" for approximately one year), *with Hernandez*, 670 F.3d at 654 (declining to consider incidents of harassment not based on race where there was no evidence that the conduct was part of a pattern of race-based harassment). The Court finds that when evidence of Lane and Garafola's race-based harassment of Bell is taken together with evidence of the non-race-based harassment, it is reasonable to conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of Bell's employment. Accordingly, Defendants' request that the Court dismiss Bell's hostile work environment claim on the basis of his race is **DENIED**.

### D. Bell's Hostile Work Environment Claim on the Basis of His National Origin

A plaintiff may establish a Title VII violation based on national origin discrimination creating a hostile work environment. To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[7] *Ramsey*, 286 F.3d at 268 (citations omitted). Here, Defendants contend that Bell failed to allege a

---

[7] As mentioned above, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

separate and distinct national origin discrimination claim.  Bell failed to present any argument or evidence in opposition to Defendants' argument.

National origin, though often confused with race, refers to "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973).  Accordingly, the EEOC Guidelines on Discrimination Because of National Origin define national origin discrimination "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group."  29 C.F.R. § 1606.1.

Nothing in the record suggests that Bell's national origin is *not* American.  Rather, it is undisputed that Bell was born in the State of Florida.  Further, Bell failed to present any evidence regarding his or his ancestor's place of origin.  Accordingly, the Court finds that Bell's national origin discrimination claim is not a separate and distinct claim.  As such, an analysis of Bell's national origin claim would merely duplicate the Court's analysis of his race claim.  *See Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) (in some contexts, national origin and racial discrimination are "so closely related . . . as to be indistinguishable.")  When viewing the facts, it is clear that Bell is alleging race discrimination, and that his claim of discrimination on the basis of national origin is superfluous.  Accordingly, Defendants' request that the Court dismiss Bell's claim that he was subjected to a hostile work environment claim on the basis of his national origin is **GRANTED**.

### E. Bell's Constructive Discharge Claim

While it is not entirely clear from Bell's submission to the Court, it appears Bell contends that Defendants constructively discharged him after he requested additional time off to recover from knee surgery by requiring him to return his demonstrator vehicle to the dealership.

"Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To succeed on his constructive discharge claim, Bell must show "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Hypolite v. City of Houston*, 493 Fed. Appx. 597, 607-608 (5th Cir. 2012) (quoting *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012)). There must be "a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.* (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011)). Therefore, courts in the Fifth Circuit consider aggravating factors including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.* (citing *Nassar*, 674 F.3d at 453). Here, Defendants argue that Bell cannot point to sufficient evidence to establish these factors.

Viewing the facts in the light most favorable to Bell, the Court finds that he has not presented sufficient evidence from which a jury could conclude that he was constructively discharged. As noted above, to survive summary judgment, Bell must present evidence of working conditions even more egregious than those required to establish a hostile working environment. *Hypolite*, 493 Fed. Appx. at 607-608. Evidence that Defendants demanded Bell return a demonstrator vehicle, without more, is insufficient to meet the extremely high standard for a constructive discharge claim. Indeed, Bell has failed to cite, nor has the Court identified, any binding case law that would require the Court to conclude otherwise. Accordingly, Defendants' request that the Court dismiss Bell's constructive discharge claim is **GRANTED**.

## F. Bell's Assault and Battery Claims

In Louisiana, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . ." *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003) (citing *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)). According to the Louisiana Supreme Court, the defendant's intention need not be malicious nor need it be an intention to inflict actual damage. *Id.* (citing *Caudle*, 512 So. 2d at 391). It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. *Id.* (citing *Caudle*, 512 So. 2d at 391). In contrast, "assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. § 14:36.

In support of the motion, Defendants argue that Bell cannot point to sufficient evidence to establish that Lane intended to make a harmful or offensive contact. Thus, Defendants argue Bell's battery claim must be dismissed. However, the actor need not form the intention that his actions be harmful or offensive. *Molette v. City of Alexandria*, No. CV04-0501-A, 2005 U.S. Dist. LEXIS 44043, at *23 (W.D. La. Sept. 30, 2005) (citing Landry, 851 So.2d at 949). Rather, in the tort liability analysis, the element of intent is satisfied if the actor desires to "bring about a result which will invade the interests of another in a way that the law forbids. The actor may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good." *Caudle*, 512 So. 2d at 391.

Viewing the facts in the light most favorable to Bell, the Court finds that he has pointed to sufficient evidence to establish a dispute of material fact from which a jury could conclude that a battery was committed by Lane. Accordingly, Defendants request that the Court dismiss Bell's battery claim must be denied.

As it relates to his assault claim, Bell must establish three elements: (1) "an intent to scare mental element"; (2) "conduct by defendant of the sort to arouse reasonable apprehension of bodily harm"; and (3) "the resulting apprehension on the part of the victim." *State v. Blaise*, 504 So.2d 1092 (La. App. 5th Cir. 1987). Here, Bell failed to address, let alone present any evidence to establish these elements. As such, Defendants' request that the Court dismiss Bell's assault claim must be granted.

Accordingly, Defendants' request that the Court dismiss Bell's assault and battery claims is **GRANTED IN PART** and **DENIED IN PART**.

### G. Bell's Intentional Infliction of Emotional Distress Claim

In Louisiana, in order to recover for intentional infliction of emotional distress, a plaintiff must establish: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In support of the motion, Defendants argue that Bell cannot point to sufficient evidence to establish these elements.

In opposition, Bell failed to point the Court to specific evidence to support each prong of his intentional infliction of emotional distress claim. Instead, Bell generally argues that where there is a question as to whether there was pattern of harassment, summary judgment is inappropriate. However, Bell's bare assertion that there are genuine disputes of material fact, without more, is insufficient. Even assuming, *arguendo*, that the evidence in the record establishes that Lane and Garafola's conduct was extreme and outrageous, Bell has failed to point the Court to any evidence whatsoever to establish that the emotional distress suffered by him rises to the level of severe distress required to support such a claim, or that Lane and/or Garafola desired to inflict severe emotional distress upon Bell or knew that severe emotional distress would be certain or substantially certain to result from their conduct toward

Bell. Accordingly, the Court finds that Bell has failed to present sufficient evidence to establish a genuine dispute of material fact from which a jury could conclude that Lane or Garafola are liable for intentional infliction of emotional distress. As such, Defendants' request that the Court dismiss Bell's intentional infliction of emotional distress claim is **GRANTED**.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 61)** is **GRANTED IN PART** and **DENIED IN PART**.

- Defendants' request that the Court dismiss Bell's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, is **GRANTED**. Accordingly, Bell's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, are **DISMISSED**.

- Defendants' request that the Court dismiss Bell's claim under La. R.S. § 23:631 is **GRANTED**. Accordingly, Bell's claim under La. R.S. § 23:631 is **DISMISSED**.

- Defendants' request that the Court dismiss Bell's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**. Accordingly, Bell's hostile work environment claim on the basis of his sex is **DISMISSED**.

- Defendants' request that the Court dismiss Bell's hostile work environment claim on the basis of his race is **DENIED**.

- Defendants' request that the Court dismiss Bell's hostile work environment claim on the basis of his national origin is **GRANTED**. Accordingly, Bell's hostile work environment claim on the basis of his national origin is **DISMISSED**.

- Defendants' request that the Court dismiss Bell's constructive discharge claim is **GRANTED**. Accordingly, Bell's constructive discharge claim is **DISMISSED**

- Defendants' request that the Court dismiss Bell's battery claim is **DENIED**.

- Defendants' request that the Court dismiss Bell's assault claim is **GRANTED**. Accordingly, Bell's assault claim is **DISMISSED**.

- Defendants' request that the Court dismiss Bell's intentional infliction of emotional distress claim is **GRANTED**. Accordingly, Bell's intentional infliction of emotional distress claim is **DISMISSED**.

Baton Rouge, Louisiana, this 30th day of September, 2014.

_____

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**